## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **RONALD SEXTON** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.** _____ |
| ) | |
| **AMERICAN NATIONAL PROPERTY AND** ) | |
| **CASUALTY COMPANY,** ) | |
| ) | |
| **Serve at:** ) | |
| **R/A The Corporation Company** ) | |
| **120 South Central Avenue** ) | |
| **Clayton, MO 63105** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

COMES NOW Plaintiff Ronald Sexton for his claims against Defendant American National Property and Casualty Company ("ANPAC"), states as follows:

### PARTIES

1.      Plaintiff is a citizen and resident of the State of Kansas.  Plaintiff is a residential homeowner who resides at 2900 Verona, Mission Hills, Kansas.

2.      ANPAC is a Missouri Company with its principal place of business located at 1949 East Sunshine, Springfield, Missouri.

3.      ANPAC is a property and casualty insurance company that provides a variety of personal and business insurance lines.  ANPAC is a subsidiary of American National Insurance Company ("ANIC").  ANIC is traded on the NASDAQ stock exchange and according to its website it reported net income of $268,372,000 in 2013 and of $191,041,000 in 2012.

4.     Plaintiff is named as an additional insured under an insurance policy issued by ANPAC Policy No. 2401X0757.

## JURISDICTION AND VENUE

5.     ANPAC is licensed to conduct insurance business in the State of Kansas and is regulated by the State of Kansas.

6.     ANPAC conducted business in Kansas during all times relevant to the issues underlying this lawsuit and issued its policy to Plaintiff in Kansas.

7.     The amount in controversy in this case exceeds the sum or value of $75,000, exclusive of interest and costs.  Accordingly, this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332.

8.     Jurisdiction is proper in Kansas because at all relevant times, ANPAC engaged in business in Kansas, negotiated and entered into insurance contracts in Kansas, and have engaged in acts that caused injury to Plaintiff, a Kansas resident.

9.     Venue is proper within this judicial district by virtue of 28 U.S.C. §1391 because Plaintiff is a resident of this district and all or a substantial part of the acts, omissions, and events that gave rise to this claim took place within this judicial district.

## FACTS COMMON TO ALL ALLEGATIONS

### The Underlying Dispute

10.     In 2010, Plaintiff decided to have a driveway installed at his Mission Hills home.

11.     Plaintiff as homeowner, and Tholen Construction, as contractor, entered into a contract to install the driveway at Plaintiff's residence, on September 27, 2010.  As part of the contract, Tholen Construction was to be paid a total of $126,942 to be paid in milestone

payments to become due based on Tholen Construction's completion of various stages of construction.

12.    Tholen Construction hired several subcontractors to perform the actual work. These subcontractors included Long's Lawn and Landscape who installed the paver driveway among other things, and C.A. Enterprises, Inc., a masonry contractor hired to lay stone and brick on certain portions of the project.

13.    During and after construction, a dispute arose between Plaintiff and Tholen Construction, and its subcontractors, regarding the performance of Tholen Construction work on the project.

14.    Tholen Construction was required under the contract to complete the driveway in approximately seven (7) weeks.  It took Tholen Construction over a year to install the driveway and it walked off of the job prior to completion.

15.    Tholen Construction repeatedly damaged Plaintiff's property during the course of construction and its work was deficient and defective in many respects.  The damage caused by Tholen Construction to Plaintiff's property includes, but is not limited to, the following:

   a.  Damaging a fountain and two antique cherubs;

   b.  Damaging his garage slab;

   c.  Damaging his limestone front step;

   d.  Damaging his landscaping;

   e.  Damaging the heating system for the driveway and other areas of the driveway.

16.    During the course of construction, Plaintiff was forced to pay multiple of Tholen Construction's subcontractors directly to avoid the threat of a lien being placed on his property because Tholen Construction was not timely paying its subcontractors.

3

17. For instance, C.A. Enterprises submitted its invoices directly to Plaintiff after Tholen Construction failed to pay them. Plaintiff paid C.A. Enterprises for these invoices totaling more than $50,000.

18. Tholen Construction was aware that Plaintiff made payments to certain of its subcontractors during construction.

19. Tholen Construction claimed that Plaintiff interfered with its business relations and/or contract with C.A. Enterprises, including by paying them more than they were due.

20. Tholen Construction walked off the job without completing the work in October 2011, over one year after the original contract was signed. Tholen Construction refused Plaintiff's repeated requests to try to resolve any outstanding issues regarding the project.

21. Tholen Construction and its subcontractors repeatedly executed contract amendments agreeing that no change orders existed during the course of the project.

22. Tholen Construction and its subcontractors also repeatedly executed lien waivers in exchange for milestone payments throughout the course of the project thereby affirmatively waiving any and all claims, liens, or rights against Plaintiff and his property.

23. On March 5, 2012, Tholen Construction and Long filed their Petition against Plaintiff in district court in Johnson County, Kansas, Case No. 12ML00101.

24. On the same day, Tholen Construction also filed Motion for Stay Pending Mandatory Arbitration.

25. On March 30, 2012, Tholen Construction filed its Demand for Arbitration with the American Arbitration Association, Case No. 57-20-1200-0036 (the lawsuit and arbitration are collectively referred to as the "Underlying Litigation").

26.     In its demand, Tholen Construction asserted a variety of claims against Plaintiff, including but not limited to, fraud, breach of contract, breach of implied-in-fact contract or quantum meruit, contract implied in law (quasi-contract) or unjust enrichment, civil conspiracy to intentionally interfere with business relations and/or contract, alleged delay damages from dog attacks, allegations of invasion of privacy, allegations for a claim for, or similar to, malicious prosecution, and a variety of other allegations and claims.

27.     On May 2, 2012, Sexton filed his Answer and Counterclaims for fraud, KCPA violations, slander of title, negligence, and breach of contract.

28.     On May 22, 2013, the Kansas District Court compelled arbitration.

29.     The arbitration hearing began in June 2013 and is still ongoing.  The hearing has already consumed twenty-three hearing days in Tholen Construction's case-in-chief with approximately eleven hearing days still scheduled with substantial amounts of evidence and testimony already presented.

30.     ANPAC has had a representative present during the entire arbitration proceeding and ANPAC is aware of all of the allegations, testimony and evidence presented in the Underlying Litigation.

31.     While Plaintiff steadfastly denies the allegations set forth by Tholen Construction and Long's Lawn and Landcare in the Underlying Litigation, several claims and allegations asserted in the Underlying Litigation triggered potential coverage under ANPAC's Policy.

## ANPAC's Policy

32.     Tholen Construction agreed that it would add Plaintiff as an additional insured to its Policy.  Plaintiff advanced payment Tholen Construction for the additional insured coverage.

33.    ANPAC issued a Contractor Advantage Policy of insurance, Policy No. 2401X0757, effective from December 7, 2010 to December 7, 2011, to Thomar Properties LLC d/b/a Tholen Construction (the "Policy"). Plaintiff has attached a true and accurate copy of the ANPAC Policy, attached hereto as Exhibit A.

34.    Plaintiff was added as a named additional insured in the ANPAC Policy.  Thus, Plaintiff is a named insured.  (See Exhibit B, attached hereto).

35.    The ANPAC Policy provides insurance coverage with a limit for each occurrence of $1,000,000, and an aggregate limit of $2,000,000.00.

36.    ANPAC's Policy provides both property and liability coverage and is an occurrence based policy.

37.    The Policy must be construed in favor of Plaintiff as the insured.

38.    ANPAC's Policy provides that it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury", 'property damage', 'personal injury' or 'advertising injury', to which this insurance applies." (Ex. A, Businessowners Liability Coverage Form Section).

39.    The ANPAC Policy requires it to provide a defense to its insureds for any claims of "bodily injury", "property damage", "personal injury" or "advertising injury" made against the insured." (Businessowners Liability Coverage Form, at p. 1 of 15).

40.    The ANPAC Policy provides that for the purposes of the duty to defend, the term "suit" includes any arbitration. (Businessowners Liability Coverage Form, F.16).

41.    ANPAC is required under the Policy to pay all costs incurred by an insured in defending a lawsuit or arbitration.

42.    The ANPAC Coverage defines "personal injury" as "injury, other than "bodily injury", arising out of one or more of the following offenses;

(b) Malicious prosecution;

(d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services; or

(e) Oral or written publication of material that violates a person's right of privacy.

(Ex. B, Businessowners Liability Coverage Form, at F.13).

43.    The ANPAC Policy provides advertising coverage to include:

a.    Oral or written publications of material that slanders or liable a person or organization or disparages a person's or organization's goods, produces or services.

b.    Oral or written publication material that violates a person's right of privacy;

c.    Misappropriation of advertising ideas or style of doing business; or

d.    Infringement of copyright, title or slogan.

(Ex. A, Businessowners Liability Coverage Form, at F.1).

44.    The Policy provides "bodily injury" coverage.  "Bodily injury" is defined in the Policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (Ex. A, F.3.)

45.    The ANPAC Policy defines bodily injury to include "damages claimed by any person or organization for"…"loss of services" arising from a "bodily injury". (Ex. A, Businessowners Liability Coverage Form, at A.1.c).

## ANPAC Owes Plaintiff a Duty of Good Faith Under the Policy

46.    ANPAC owes Plaintiff a duty of good faith and fair dealing in discharging its obligations under the Policy.

47.     ANPAC is required to take all reasonable steps necessary under the Policy to protect the interests of its insured.  ANPAC must treat all insured's under its policy equally and cannot favor one insured to the detriment of another insured.

48.     ANPAC, as an insurer, must place Plaintiff's interests ahead of its own interests under the Policy.

49.     In evaluating coverage, ANPAC must construe the Policy to provide coverage to its insured wherever possible.

50.     An insurer's duty to defend is triggered under a Policy if the allegations or facts establish any potential or possible coverage.  An insurer's duty to defend is triggered if any potential coverage exists regardless of the presence of other uncovered claims.

51.     The duty to defend arises even if the allegations are groundless and applies no matter how unlikely it is that the insured will be found liable.

52.     An insurer's refusal to defend a potentially covered claim constitutes unjustified refusal and renders the insurer liable to the insured for all resultant damages from that breach of contract.

53.     ANPAC owes Plaintiff a duty to defend any potentially covered claims under the Policy.  ANPAC owes Plaintiff a duty to defend when its insured is exposed to potential liability that may be covered under the policy.

54.     In determining whether its duty to defend has been triggered, ANPAC must consider all facts and allegations in the relevant pleadings as well as to conduct a prompt, reasonable investigation.

55.     ANPAC must resolve any ambiguities in potential coverage in the Policy in favor of finding coverage for its insured rather than denying coverage.

8

### ANPAC's Discrimination of Plaintiff

56.     ANPAC has repeatedly refused to defend Plaintiff in the lawsuit or in the arbitration, even under a reservation of rights.  ANPAC's refusal to defend Plaintiff is in bad faith.

57.     ANPAC has repeatedly favored the rights of its other insured, Tholen Construction, to the detriment of Plaintiff's rights under the Policy.

58.     ANPAC owes Plaintiff a duty to properly investigate the nature of the claim to determine if the potential for coverage exists.

59.     Remarkably, ANPAC's coverage "investigation" was mostly limited to interviewing Tholen Construction's attorney.  (7/17/13 letter p. 10, 12, & 13).  At the time, ANPAC understood that its insureds, Tholen Construction and Plaintiff, were opposing parties and had both asserted affirmative claims against each other in the Underlying Litigation.  Thus, at the time of the interviews, ANPAC understood that it was in Tholen Construction's interest to get ANPAC to deny a defense to Plaintiff in the Underlying Litigation.

60.     ANPAC similarly denied coverage under its Policy when originally tendered by Tholen Construction.  However, contrary to its treatment of Plaintiff, ANPAC offered to defend Tholen Construction on a reservation of rights in the Underlying Litigation.

61.     Despite Plaintiff being a named insured, ANPAC refused to defend Plaintiff under a reservation of rights in bad faith similar to what it extended to Tholen Construction.

62.     In so doing, ANPAC consciously and in bad faith intended to treat its insureds differently under the Policy to the detriment of Plaintiff.  ANPAC discriminated against Plaintiff under the Policy by not extending him the same consideration and treatment as it has to its other insured.

63.     ANPAC knew that it benefited Tholen Construction if it denied a defense to Plaintiff and that such denial would harm Plaintiff.  Alternatively, ANPAC knew at the time that it would benefit Tholen Construction to provide it a defense under the Policy while harming Plaintiff.  Thus, ANPAC consciously chose the course of action that most harmed the Plaintiff.

64.     When requested by Plaintiff, ANPAC refused to identify any claims or Policy provisions that it determined potentially provide coverage to Tholen Construction in the Underlying Litigation.

65.     ANPAC further refused to disclose its communications with Tholen Construction or counsel for Tholen Construction, even over coverage issues.

66.     As a result of ANPAC's bad faith, Plaintiff has been required to personally pay all legal fees and other expenses related to the Underlying Litigation, including several hundred thousand dollars in arbitrators' fees.

67.     Alternatively, ANPAC has largely paid for Tholen Construction's legal expenses and costs incurred in the Underlying Litigation, including Tholen Construction's portions of the arbitrators' fees.

68.     Thus, ANPAC has largely financed Tholen Construction's affirmative claims asserted against Plaintiff in the Underlying Litigation.

69.     It is improper for insurers such as ANPAC to finance or pursue such affirmative claims against its insureds.

### ANPAC's Bad Faith Breach of its Duty to Defend

70.     Plaintiff has incurred substantial sums in defending himself in the Underlying Litigation and will continue to incur substantial sums in the future during the pendency of those proceedings.

71.     ANPAC has a duty to defend Plaintiff because the potential for coverage under a number of provisions were triggered based on the allegations asserted against Plaintiff in the Underlying Litigation or the facts that could have been uncovered based on a prompt and reasonable investigation of the claims.

72.     For instance, Tholen Construction alleged in its arbitration demand that Plaintiff **"interfered with Tholen Construction's business expectancies and relationships"** as a result of alleged interference by Plaintiff with Tholen Construction's business relationship and contract with C.A. Enterprises.   These allegations relate to Plaintiff's direct payments made to C.A. Enterprises for work performed by C.A. for Tholen Construction during the project.

73.     Tholen Construction alleged that it was damaged as a result of this alleged interference with business relations and/or tortious interference with contract: "Tholen Construction has suffered damages in the amount of $339,883.40, exclusive of interest, costs, and attorney fees."

74.     These allegations state a claim for interference with business relations and/or tortious interference with contract which are both claims that are covered under ANPAC's Policy.

75.     Tholen Construction made numerous other similar allegations constituting intentional interference with business relations and/or contract and has offered evidence and testimony in furtherance of its claim in the Underlying Litigation.

76.     On January 21, 2014, the Tenth Circuit Court of Appeals ruled that ANPAC's duty to defend an insured was triggered under its "personal injury" coverage for a claim of intentional interference with business relations and/or contract. *Yousef, M.D. v. Cohlmia, M. D.*, 741 F.3d 31 (10th Cir. 2014).

77.    The Tenth Circuit unequivocally concluded that ANPAC's "personal injury" coverage provides coverage for claims for intentional interference with business relations:

> "We similarly conclude that the provision in **ANPAC's policy** providing coverage for 'personal injury' resulting from 'the publication or utterances of a libel or slander or of other defamatory or disparaging material' **is broad enough to encompass the tort of intentional interference with business relations**."

*Yousef*, 741 F. 3d at 39.

78.    The ANPAC Policy contains 'personal injury' coverage nearly identical to the ANPAC 'personal injury' coverage at issue in *Yousef.*

79.    ANPAC was a party in the *Yousef* action and has been aware of this decision for at least six (6) months, which is based on numerous prior Tenth Circuit decisions on the same coverage issue, including decisions applying Kansas law.

80.    ANPAC has intentionally decided in bad faith to continue to deny Plaintiff a defense, even under a reservation of rights, despite its knowledge that the Tenth Circuit Court of Appeals has already ruled as a matter of law that coverage potentially exists under ANPAC's policy for claims of intentional interference with business relations and/or contract.

81.    ANPAC's duty to defend was further triggered under its "personal injury" coverage for claims for malicious prosecution.  ANPAC's policy provides "personal injury" coverage for claims for malicious prosecution.

82.    Tholen Construction repeatedly alleges facts throughout its arbitration demand that constitute a claim for or substantially similar to malicious prosecution against Plaintiff.

83.    ANPAC's policy further provides coverage for "personal injury" arising out of invasion of a person's right of privacy.

84.    Tholen Construction alleged that: "In addition to threats of litigation, Sexton informed Adam Tholen that he hired private investigators to gather information on Shane Long,

12

the owner of Long's Lawn and Landscape, in an attempt to further manipulate and control Tholen Construction."

85.     The policy provides coverage for claims related to invasion of privacy under both the personal injury and advertising injury coverages.  Thus, ANPAC's duty to defend Plaintiff under these coverages was triggered upon the filing of the arbitration demand.

86.     ANPAC's duty to defend was further triggered under its "bodily injury" coverage. ANPAC's Policy provides coverage for "bodily injury."

87.     All damages arising from any claims for bodily injury are specifically covered under the policy: "[d]amages because of 'bodily injury' include damages claimed by any person or <u>organization</u> for care, <u>loss of services</u> or death resulting at any time from the 'bodily injury.'"

88.     Tholen Construction alleged in its Arbitration Demand that some of its subcontractor's employees were injured by attacks by Plaintiff's dog that allegedly occurred on multiple occasions during the construction project.

89.     Tholen Construction claimed that its or its subcontractor's workers were attacked on multiple occasions by Plaintiff's dogs during the course of the project which resulted in Tholen Construction incurring delay damages.  Tholen Construction further claims damages in the arbitration for alleged delays in the project resulting from these alleged dog attacks and submitted those damages as part of the evidence presented during the course of the arbitration. Tholen Construction has further claimed that it could not separate out the damages caused by any specific delay.

90.     Similarly, ANPAC's duty to defend Plaintiff arose as a result of Tholen's indemnity agreements with Plaintiff that cover claims for non-payment for unjust enrichment or quantum meruit.

91.    Under ANPAC's Policy, an "insured contract" means:

f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

92.    Tholen Construction, and its subcontractors, executed three (3) Lien Waivers during the course of the project certifying that all payments had been received from Plaintiff for all work performed as of the date of the waiver.  These lien waivers provided the following release by Tholen Construction:

"this Release shall completely and forever waive and release any and all claims of Contractor arising out of or relation to work Contractor performed on the Project or the property on which the Project is located, including claims based on mechanic's lien statutes, any state or federal statutory bond right, any private bond right, and any claim for, or right to, additional payment that Subcontractor may have or claim as a result of work performed through the Release Date.  This Release shall be effective for all such claims, labor, services, and equipment or materials furnished through the Release Date."

93.    Tholen Construction further warranted and certified that all payments due to any subcontractor had been made for any work performed as of the date of the release.  In these agreements, Tholen Construction also agreed to indemnify Plaintiff related to the making of any and all claims arising out of any payment disputes on the projects:

"Contractor hereby acknowledges and affirms its obligation to defend, indemnify, and hold Owner harmless from all liens, claims, demands, penalties, losses, costs, fees (including attorney's fees), disbursements, and liability whatsoever arising out of Contractor's failure to make payments as certified herein."

94.    This indemnity provision covers all claims asserted against Plaintiff in the Underlying Litigation.

95.     The Policy specifically provides coverage for insured contracts covering indemnity for "tort liability."  Tort liability is defined under the insured contract provision to mean "a liability that would be imposed by law in the absence of any contract or agreement." Claims for unjust enrichment or quantum meruit fit within this broad definition of tort liability under the Policy as they are claims for liability imposed by law in the absence of a contract or agreement.

96.     Thus, the Policy provides coverage for claims for unjust enrichment or quantum meruit that are covered under the indemnity agreements entered into between Tholen Construction, and its subcontractors, and Plaintiff.  Therefore, ANPAC breached its duty to defend Plaintiff.

97.     On information and belief, other provisions of ANPAC's Policy potentially provide coverage to Plaintiff as a result of the allegations, claims, facts and other evidence presented in the Underlying Litigation.

98.     ANPAC breached its duty to defend Plaintiff in the Underlying Litigation.

**ANPAC Breached its Duty to Timely Settle a Properly Presented Claim by Plaintiff**

99.     ANPAC further breached its duties of good faith in failing to timely settle or pay properly presented claims.  Plaintiff was led to believe that ANPAC would be settling the claim on the damage to the cherub fountains damaged by Tholen Construction and/or its subcontract during construction.

100.    For instance, on March 8, 2012, ANPAC informed Plaintiff that, "we are will to review the damage to the fountain and make an offer of settlement that reflects our insured's portion of negligence in the matter."

101.    Tholen Construction's representatives testified in the Underlying Litigation that its subcontractor caused the damage and that Tholen Construction is responsible for the work of its subcontractors.  Thus, liability regarding the damage to the cherub fountains is not in dispute.

102.    Despite this, ANPAC never made any such settlement offer related to the cherub fountains and has since refused to negotiate a timely resolution of the claim in bad faith.

**ANPAC Should be Equitably Estopped from Claiming Any Cancellation of the Policy**

103.    In, or about, April or May of 2011, ANPAC provided notice of cancellation of the Policy to Plaintiff claiming a problem with payment from Tholen Construction.  Plaintiff immediately requested Tholen Construction correct the payment issue and was informed by ANPAC that the issue was resolved.

104.    Subsequently, ANPAC, through its agents and employees, notified Plaintiff in writing that the Policy had been reinstated.  Plaintiff relied on this representation.

105.    ANPAC never provided Plaintiff any further notice of cancellation of the Policy. ANPAC now claims that the Policy was never reinstated in April or May of 2011 and that the Policy was terminated at that time.

106.    The allegations asserted against Plaintiff in the Underlying Litigation include alleged acts and omissions that occurred throughout the entirety of the driveway construction project and fall within the Policy coverage period regardless of whether the Policy was cancelled.

107.    Moreover, ANPAC should be equitably estopped from claiming the Policy was cancelled since it affirmatively represented to Plaintiff that it had been reinstated and never provided any subsequent notice of cancellation or forfeiture.

## COUNT I – DECLARATORY RELIEF – DUTY TO DEFEND

108.   Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 107 of the Complaint as though fully set forth here.

109.   A dispute has arisen between the parties regarding the meaning, rights, and obligations of the parties pursuant to the terms of the Policy.  A true and accurate copy of the ANPAC Policy is attached hereto.

110.   Plaintiff alleges that the allegations and claims asserted against him in the Underlying Litigation raised or triggered potential coverage under ANPAC's Policy.

111.   Thus, Plaintiff alleges that the Policy requires ANPAC to defend him in the Underlying Litigation.

112.   ANPAC has wrongfully refused to defend Plaintiff in the Underlying Litigation.

113.   Therefore, Plaintiff is seeking an order from the Court declaring that ANPAC has a duty to defend Plaintiff under the Policy in the Underlying Litigation.

114.   Plaintiff is further seeking an order from the Court that ANPAC must reimburse Plaintiff for a legal fees and defense costs incurred, as well as arbitrator fees and costs, thus far in his defense in the Underlying Litigation and that ANPAC is required to provide a reasonable defense and all fees and costs for the duration of the Underlying Litigation.

WHEREFORE, Plaintiff Ronald Sexton prays for judgment against the defendant and for an order declaring that Defendant ANPAC has a duty to defend Plaintiff in the Underlying Litigation and is required to reimburse Plaintiff for all defense fees and costs already incurred and that will be incurred in the future, for an amount in excess of $75,000, which will fairly and reasonably compensate plaintiff for his damages, for his costs, expenses, and attorney's fees, and for such other relief as the Court deems just.

## COUNT II – BREACH OF CONTRACT

115.    Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 114 of the Complaint as though fully set forth here.

116.    ANPAC issued its Policy of insurance naming Plaintiff as an additional insured endowed with certain rights.  The Policy represents a binding enforceable contract entered into by the parties.

117.    ANPAC negligently performed its duties under the contract and repeatedly breached its duties and obligations set forth in the Policy owed to Plaintiff.  ANPAC's breaches of its Policy are continuing and ongoing.

118.    ANPAC's breaches of the Policy were without reasonable justification as defined by K.S.A. 40-256.  Thus, ANPAC is liable for Plaintiff's attorney's fees and costs incurred in brining this action.

119.    Plaintiff has been damaged as a result of ANPAC's negligence and breaches of the Policy, including but not limited to, incurring substantial legal fees and expenses, and arbitrator fees, in defending himself in the Underlying Litigation.  Plaintiff's damages are continuing and ongoing.

WHEREFORE, Plaintiff Ronald Sexton prays for judgment against the defendant for an amount in excess of $75,000, which will fairly and reasonably compensate plaintiff for his damages, for his costs, expenses, and attorney's fees, and for such other relief as the Court deems just.

## COUNT III – BREACH OF GOOD FAITH AND FAIR DEALING

120.   Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 119 of the Complaint as though fully set forth here.

121.   ANPAC owed Plaintiff a duty of good faith and fair dealing in performing its duties under the Policy.

122.   ANPAC breached its duties of good faith and fair dealing in its investigation, adjustment, and refusal to defend Plaintiff in the Underlying Litigation.  ANPAC's breach of its duties is ongoing.

123.   ANPAC's breaches of its duty of good faith and fair dealing were without reasonable justification as defined by K.S.A. 40-256.  Thus, ANPAC is liable for Plaintiff's attorney's fees and costs incurred in brining this action.

124.   Plaintiff has been damaged by ANPAC's breaches of its duties, which are continuing and ongoing.  Plaintiff's damages include, but are not limited to, all defense costs and arbitrator's fees and costs incurred in defending the Underlying Litigation.

WHEREFORE, Plaintiff Ronald Sexton prays for judgment against the defendant for an amount in excess of $75,000, which will fairly and reasonably compensate plaintiff for his damages, for his costs, expenses, and attorney's fees, and for such other relief as the Court deems just.

## COUNT IV – EQUITABLE ESTOPPEL

125.   Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 124 of the Complaint as though fully set forth here.

126.   In approximately April or May 2011, ANPAC notified Plaintiff that the Policy was being cancelled because of payment problems with Tholen Construction.

127. Plaintiff requested Tholen Construction rectify the payment dispute with ANPAC.

128. Subsequently, ANPAC, through its employees and agents, represented to Plaintiff that the Policy was reinstated and in full force and effect after the notice of termination.

129. Plaintiff relied to his detriment on ANPAC's representations.

130. Plaintiff was damaged by his reliance on ANPAC's representations regarding the status of the Policy.

131. As such, ANPAC should be equitably estopped from claiming any forfeiture or cancellation of the Policy occurred after the making of its representations to Plaintiff about reinstatement.

WHEREFORE, Plaintiff Ronald Sexton prays for judgment against the defendant for an amount in excess of $75,000, which will fairly and reasonably compensate plaintiff for his damages, for equitable relief to estop ANPAC from claiming any forfeiture of the Policy during the policy period, for his costs, expenses, and attorney's fees, and for such other relief as the Court deems just.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates the United States Courthouse in Kansas City, Kansas as the place of trial for this cause.

## REQUEST FOR JURY TRIAL

Plaintiff requests trial by jury of all issues of fact.

Respectfully submitted,

By: _____
Jason L. Buchanan          KS #20815
Thomas R. Buchanan      KS #10572
605 West 47th Street, Suite 350
Kansas City, MO  64112
(816) 753-5400 - Phone
(816) 753-9996 - Fax
jb@mcdowellrice.com
tbuchanan@mcdowellrice.com
**ATTORNEYS FOR PLAINTIFF**