## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RONALD SEXTON,

       *Plaintiff,*

  vs.

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,

       *Defendant.*

Case No. 14-2384-EFM-JPO

## MEMORANDUM AND ORDER

Plaintiff Ronald Sexton brings suit against American National Property and Casualty Company ("ANPAC"). He claims that ANPAC had a duty to defend him in underlying litigation, and ANPAC's failure to defend was in bad faith. ANPAC filed a Motion to Dismiss (Doc. 7) asserting that Sexton fails to state a claim for relief because ANPAC had no duty to defend Sexton. Because the Court agrees with ANPAC, the Court grants ANPAC's motion.

### I.      Factual and Procedural Background

Plaintiff Sexton is a resident of Kansas who owns a home in Mission Hills, Kansas. Defendant ANPAC is a property and casualty insurance company with its principal place of business in Springfield, Missouri. The current dispute between these parties is related to an underlying dispute over the construction of a driveway at Sexton's home.

On September 27, 2010, Sexton entered into a contract with Tholen Construction to have a driveway installed at his home. As part of the contract, Sexton agreed to pay Tholen Construction a total of $126,942 in payments to become due at various stages of completion. Tholen Construction hired several subcontractors to perform the work, including Long's Lawn and Landscape and C.A. Enterprises.

ANPAC was Tholen Construction's insurance company. ANPAC issued a Contractor Advantage Policy of insurance, effective December 7, 2010, to December 7, 2011. Tholen Construction agreed that it would add Sexton as an additional insured to Tholen Construction's insurance policy, and Sexton advanced payment to Tholen Construction for the additional insured coverage.

During and after the construction, a dispute arose between Sexton and Tholen Construction, and its subcontractors, regarding the performance of work on the project. Although the contract required the completion of the driveway in approximately seven weeks, Tholen Construction took over one year to install the driveway and allegedly walked off of the job in October 2011, prior to the driveway's completion. In addition, Tholen Construction damaged Sexton's property during the course of construction.

Sexton alleges that during the construction of the driveway, he was forced to pay C.A. Enterprises, one of Tholen Construction's subcontractors, directly to avoid the threat of a lien being placed on his property because Tholen Construction was not timely paying its subcontractors. Sexton paid C.A. Enterprises more than $50,000. Tholen Construction was aware that Sexton had made payments to C.A. Enterprises.

On March 5, 2012, Tholen Construction and Long's Lawn and Landscape filed a Petition against Sexton in the district court in Johnson County, Kansas. On the same day, Tholen

Construction filed a motion to stay pending mandatory arbitration.  On March 30, 2012, Tholen Construction filed its Demand for Arbitration with the American Arbitration Association. The Johnson County lawsuit and the arbitration are referred to as the "underlying litigation."

In the underlying litigation, Tholen Construction alleged that Sexton failed to pay Tholen Construction for the fair value of the work provided.[1]  On May 2, 2012, Sexton filed an answer and asserted several counterclaims, including fraud, Kansas Consumer Protection Act ("KCPA") violations, slander of title, negligence, and breach of contract. On May 22, 2013, the district court in Johnson County compelled arbitration, and arbitration began in June 2013.

Sexton filed this suit in this Court against ANPAC on August 1, 2014. At the time it was filed, the arbitration hearing had already taken twenty-three days and was ongoing.[2]  Sexton, as an additional insured under Tholen Construction's insurance contract with ANPAC, contends that several of the claims asserted against him in the underlying litigation triggered potential coverage under the insurance policy.  He asserts that ANPAC has repeatedly refused to defend him in the underlying litigation, and ANPAC's refusal to defend is in bad faith.  Sexton also contends that ANPAC repeatedly favored the rights of its other insured, Tholen Construction, to the detriment of Sexton's rights under the policy. Sexton asserts four claims: (1) declaratory relief—duty to defend, (2) breach of contract, (3) breach of good faith and fair dealing, and (4) equitable estoppel.  The first three claims are all related to ANPAC's alleged failure to defend. The fourth claim asserts that ANPAC should be equitably estopped from claiming any forfeiture

---

[1] Tholen Construction specifically asserted six claims. The Court will discuss these claims below as the parties dispute what claims were actually brought against Sexton.

[2] The parties informed the Court that arbitration ended, and the arbitration panel issued an Arbitration Award on February 12, 2015.

or cancellation of the policy due to Tholen Construction's alleged failure to pay. Defendant ANPAC has now filed a Motion to Dismiss stating that Sexton fails to state a claim.

## II.   Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.[6]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Al. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

[5] *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

[7] *Iqbal*, 556 U.S. at 678-79.

[8] *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

-4-

of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[9]

Both parties rely upon documents outside of the pleadings. Sexton attached to his Complaint a portion of the insurance policy between ANPAC and Sexton. ANPAC attached to its Motion to Dismiss (1) the complete insurance policy, (2) a copy of the Demand for Arbitration (underlying litigation), and (3) a July 17, 2013, letter from ANPAC denying Sexton's request to defend him in the underlying litigation. Two of these documents, the insurance policy and the Demand for Arbitration, are central to Sexton's claims and are referenced throughout the Complaint.[10] Notwithstanding the general principle that the Court should not consider matters outside the complaint without converting a motion to dismiss to a motion for summary judgment, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."[11] Thus, the Court will consider the insurance policy and the Demand for Arbitration in deciding ANPAC's Motion to Dismiss.[12]

---

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[10] The Court notes that Sexton only attached a *portion* of the insurance policy (the Businessowners Special Property Coverage Form) to his Complaint, and he did not attach the portion with the relevant language (the Businessowners Liability Coverage Form).  Allowing ANPAC to attach the entire insurance policy provides the Court with the relevant language as well as the complete document at issue.

[11] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). As the Tenth Circuit noted in *Associated Wholesale Grocers*, "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id.* at 1385.

[12] The insurance policy provides that for the purposes of the duty to defend, "suit" includes arbitration.  *See* ANPAC's Contractors Advantage Insurance Policy, Doc. 7-2, p. 28, ¶ A(1)(a) (stating that "[ANPAC] will have the right and duty to defend the insured against any 'suit' seeking those damages") and p. 41, ¶ F(16)(a) (stating that "suit" includes "[a]n arbitration proceeding in which such damages are claimed . . . ."). The "damages" that are

Sexton, nevertheless, argues that if the Court considers the documents that ANPAC attached to its Motion to Dismiss, the Court should convert ANPAC's motion to one for summary judgment.  Sexton then includes numerous documents with his response. The Court declines to consider these additional documents or convert the motion to one for summary judgment. As noted above, the two documents that the Court will consider are repeatedly referred to throughout the Complaint and are central to Sexton's claim. Accordingly, it is necessary for the Court to consider these two documents when determining whether Sexton states a claim for relief in his Complaint.[13]

### III.    Analysis

#### A.  Choice of Law

The first issue is the law governing this action. As a court sitting in diversity, the Court must first apply the choice-of-law rules in Kansas, the forum state.[14]   Kansas courts apply the Restatement (First) of Conflict of Laws when determining choice of law issues.[15] If a contract dispute goes to the substance of the obligation, the Court should apply *lex loci contractus*, or the

---

covered under the policy include "bodily injury," "property damage," "personal injury," or "advertising injury." *See* Doc. 7-2, p. 28, ¶ A(1)(a).

[13] All of the other documents attached by the parties are not central to Sexton's Complaint. The Court will not consider the July 17, 2013, letter from ANPAC denying Sexton's request to defend him in the underlying litigation.  The contents of this letter are not relevant to this motion because the letter's only relevance is to show that ANPAC declined to defend Sexton in the underlying litigation.  Sexton alleges this fact in his Complaint, and the Court need not consider ANPAC's stated reasons in the letter for declining to defend Sexton. In addition, although the Court allowed Sexton to file a copy of the Arbitration Award after the briefing on the Motion to Dismiss was complete, the Arbitration Award is also irrelevant to this motion.

[14] *Moses v. Halstead*, 581 F.3d 1248, 1251 (10th Cir. 2009).

[15] *Id.* at 1252.

-6-

law of the state where the contract was made.[16] Generally, a cause of action for bad faith conduct against an insurer relating to the duty to defend or settle goes to the substance of the obligation.[17] Although it appears that the parties agree that their dispute goes to the substance of the contract and that the law of the state where the contract was made should therefore control this action, the parties disagree on where the contract was made.

ANPAC argues that the contract was made in Missouri.  The named insured, Tholen Construction, is a Missouri company located in Blue Springs, Missouri.  Tholen Construction purchased the insurance policy from a Missouri broker in Kearney, Missouri.  Defendant ANPAC issued the policy from its principal place of business in Springfield, Missouri, and delivered it to Tholen Construction in Missouri. Thus, ANPAC contends that Missouri law governs.

In contrast, Sexton argues that the insurance policy lists him as an additional insured and that he is a "named insured" under the contract. He asserts that he received the insurance certificate and policy at his house in Kansas and that all of the underlying alleged tortious conduct and underlying litigation occurred in Kansas.  Sexton therefore argues that the contract was made in Kansas, and Kansas law should apply.[18]

"A contract is made where the last act necessary for its formation occurs. In cases involving insurance policies, [Kansas] courts have repeatedly held the contract is made where the

---

[16] *Id; see also Layne Christenson Co v. Zurich Canada*, 30 Kan. App. 128, 142, 38 P.3d 757, 766 (2002).

[17] *Layne Christenson*, 30 Kan. App. at 143, 38 P.3d at 767 (stating that "[t]he question of the meaning of the coverage limit goes to the substance of the obligation rather than the manner of performance."); *see also Moses*, 581 F.3d at 1253-54 (relying on *Layne Christenson* and predicting that the Kansas Supreme Court would conclude that the law of the place of contracting would govern an action brought for the negligent or bad faith refusal to settle against an insurance company).

[18] Although Sexton argues that Kansas law is applicable, he states that there is no fundamental difference between Kansas and Missouri law, and he primarily cites to Missouri law throughout his brief.

policy is delivered."[19]  Here, the original contract at issue was made in Missouri between Tholen Construction and ANPAC. The insurance policy was delivered to Tholen Construction in Missouri. And although Sexton is an additional insured, and received the endorsement in Kansas, he is an additional insured under Tholen Construction's insurance policy. Generally, "endorsements merely alter part of the general terms of an insurance policy."[20] Those endorsements generally do not form a new contract and do "not alter the place of the making of the original contract for choice-of-law purposes."[21] Accordingly, the Court will apply Missouri law to this dispute.

### B.  Whether Sexton States a Claim for Relief

Tholen Construction filed suit against Sexton in the underlying litigation asserting a variety of claims. Sexton, as an additional insured under the insurance contract between Tholen Construction and ANPAC, contends that ANPAC owed him a duty to defend against the claims asserted against him. ANPAC argues that Sexton fails to state a claim because it only has a duty to defend on claims and damages actually pursued by Tholen Construction against Sexton and that Tholen Construction did not pursue any claims against Sexton that were covered under the insurance contract.

---

[19] *Layne Christensen*, 30 Kan. App. 2d at144, 38 P.3d 757 at 767 (citations omitted).

[20] *Id.* at 145, 38 P.3d at 768.

[21] *Id.* (finding that the delivery of an endorsement in Kansas did not constitute a new contract when the original insurance policy was issued and delivered in Canada and applying Canada law to the dispute).

### 1.   *Legal Standard*

There are two duties that an insurer owes to its insured, and those duties are the duty to defend and the duty to indemnify.[22] "The duty to defend is broader than the duty to indemnify."[23]

> The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependant [sic] on the probable liability to pay based on the facts ascertained through trial. The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend.[24]

"The insurer is not relieved of its duty to defend merely because the plaintiff in the underlying lawsuit pleaded his or her claims inartfully."[25]   In addition, "[b]eyond the facts alleged in the plaintiff's petition, the insurer also has a duty to defend if facts that are known to the insurer, or that are reasonably apparent to the insurer, at the commencement of the suit establish a potential for coverage."[26] But the duty to defend only arises from the facts at the outset of the case.[27] In other words, facts that come to light after the initiation of the case do not give rise to the duty to defend.[28]   Accordingly, the question in this case is whether the underlying litigation filed by Tholen Construction asserted any potential claims of liability against Sexton that would be covered by ANPAC's insurance policy.   This inquiry requires the Court to look at the Demand for Arbitration and the insurance policy.

---

[22] *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014).

[23] *McCormack Baron Mgmt. Servs. Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999).

[24] *Id.* at 170-71 (quotation marks and internal citations omitted).

[25] *Allen*, 436 S.W.3d at 552-53.

[26] *Id.* at 552.

[27] *Id.* at 553.

[28] *Id.*

## 2.   *Whether the alleged claims are covered by the insurance policy*

Tholen Construction's Demand for Arbitration was forty-six pages long and contained 329 paragraphs. Generally, Tholen Construction alleged that Sexton fraudulently induced Tholen Construction to enter into a contract with him to demolish an existing 13,000 square foot driveway and install a new paver driveway.  Although the project was originally scheduled to take approximately seven weeks and cost $125,342, Tholen Construction alleged that Sexton made numerous changes to the project which extended the project to approximately one year.  In addition, Tholen Construction alleged that Sexton requested Tholen Construction to perform miscellaneous work, unrelated to the driveway project, and then failed to pay it for this work. Tholen Construction alleged that all of the changes to the project caused it to incur expenses of approximately $423,928.90, and Sexton only paid $84,045.50.   Tholen Construction filed a mechanic's lien in the amount of $339,883.40 on February 24, 2012, and Tholen Construction sought this amount in the underlying litigation.[29] The claims specifically asserted in the Demand for Arbitration include:  Count I—Fraud in the Inducement; Count II—Breach of contract; Count III—Breach of Implied-In-Fact Contract – Quantum Meruit; Count IV—Contract Implied in Law (Quasi-Contract) – Unjust Enrichment; Count V—Civil Conspiracy; Count VI—Declaratory Judgment Related to Adam Tholen Personally.

Sexton, however, contends that the Demand for Arbitration asserts additional claims against him although they were not specifically labeled as causes of action.[30]  Sexton asserts that the following claims were allegedly asserted against him: (1) a claim for tortious interference

---

[29] The Court notes that Long's Lawn and Landscape was also a party to this underlying litigation.  For the sake of simplicity, the Court only references Tholen Construction.

[30] The Court notes that Sexton does not rely upon any of the named causes of action to support his contention that ANPAC had a duty to defend him in the underlying litigation.

with business relations and/or contract, (2) a claim for bodily injury relating to dog attacks on Sexton's premises, (3) a claim for invasion of privacy, and (4) a claim for malicious prosecution. He states that these "claims" were covered under the insurance policy which provides that ANPAC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies."[31] In addition, Sexton states that ANPAC's duty to defend arose from Tholen Construction's indemnity agreements with Sexton.

ANPAC argues that these claims were not actually asserted in the underlying litigation so there was no duty to defend against these unpled claims. Furthermore, ANPAC asserts that even if these allegations were asserted in the underlying litigation, the alleged facts related to these "claims" do not give rise to a duty to defend under the insurance policy and would not be covered by the policy.  The Court will only address ANPAC's first argument regarding Sexton's five theories of recovery as ANPAC's argument is dispositive.

### a.  *Tortious Interference with Contract*

Sexton claims that ANPAC had a duty to defend him in the underlying litigation because Tholen Construction asserted a tortious interference with contract claim against him.[32]  As noted above, the Demand for Arbitration does not specifically assert this claim. Although this fact does not preclude the Court from finding that a tortious interference claim was still asserted,[33] the lack of factual allegations asserting a claim for tortious interference in the underlying litigation does.

---

[31] ANPAC's Contractors Advantage Insurance Policy, Doc. 7-2, p. 28, ¶ A(1)(a).

[32] Sexton asserts that the alleged tortious interference with contract/business relations claim falls under the "personal injury" or "advertising injury" portion of the policy.

[33] *See Allen*, 436 S.W.3d at 552-53 (noting that a plaintiff's inartful pleading does not relieve an insurer from its duty to defend).

In Sexton's Complaint in this Court, he states that Tholen Construction alleged in the Demand for Arbitration that Sexton "interfered with Tholen Construction's business expectancies and relationships."[34] Sexton makes this assertion, however, by relying on a *part* of an allegation in Tholen Construction's *conspiracy* claim. The paragraph that Sexton relies upon for the supposed tortious interference claim states in its totality: "As a direct and proximate result of the agreement between Sexton and C.A. Enterprises to defraud Tholen Construction of money, Sexton and C.A. Enterprises interfered with Tholen Construction's business expectancies and relationships."[35]  Reading the conspiracy claim in context, and reading it along with the whole of the Demand for Arbitration, Tholen Construction alleged that Sexton engaged in fraud with C.A. Enterprises to deprive Tholen Construction from money. Indeed, Tholen Construction specifically alleged that the unlawful act in the civil conspiracy claim was fraud between Sexton and C.A. Enterprises.[36]

In both Kansas and Missouri, a tortious interference with contract claim requires "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom."[37] In the underlying litigation, Tholen Construction did not allege that Sexton interfered with Tholen Construction's contract with C.A. Enterprises. Instead, Tholen Construction alleged that Sexton engaged in

---

[34] Complaint, Doc. 1, p. 11, ¶ 72.

[35] Demand for Arbitration, Doc. 7-1, p. 43, ¶ 316.

[36] *See* Doc. 7-1, p. 42, ¶ 307 (stating that "[a]llegations of fraud and a conspiracy to defraud suffice to meet the minimum requirements of unlawfulness under the statute.").

[37] *Cohen v. Battaglia*, 296 Kan. 542, 546, 293 P.3d 752, 755 (2013); *see Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 535 (Mo. Ct. App. 2008). Although Missouri substantive law governs the contractual dispute, Tholen Construction filed the underlying litigation in Kansas. Thus, Kansas law would be applicable when determining whether Tholen Construction adequately pled claims against Sexton in the underlying litigation.

fraud *with* C.A. Enterprises to deduct sums from Tholen Construction's contract with Sexton—*not* Tholen Construction's agreement with C.A. Enterprises.  Thus, there were no allegations of interference with Tholen Construction's agreement with C.A. Enterprises.  Nor were the allegations of damages related to Tholen Construction's agreement with C.A. Enterprises.  In sum, the isolated phrase of part of one paragraph in Tholen Construction's 329-paragraph Demand for Arbitration does not assert or even potentially assert a claim for tortious interference with contract.  Accordingly, Sexton fails to state a claim that ANPAC had a duty to defend on this theory because at the outset of the case, the allegations and facts in the underlying litigation would not have provided notice to ANPAC that there was potentially a claim within the contract's coverage.[38]

### b.  *Bodily injury related to dog attacks*

Sexton also claims that ANPAC had a duty to defend him in the underlying litigation because Tholen Construction allegedly asserted a claim for bodily injury related to dog attacks.[39]  Tholen Construction's Demand for Arbitration contains only a few allegations related to dog attacks.  In the background factual assertions, Tholen Construction alleged that during the course of work at Sexton's property, Sexton's dogs bit several employees.  Tholen Construction alleged that Sexton, instead of apologizing, threatened litigation when Tholen Construction asked Sexton to keep the dogs inside while individuals were working on the project.  These allegations are the extent of the allegations related to dog attacks and bodily injury.

---

[38] The Court finds it unnecessary to consider the parties' arguments of whether the policy even includes coverage for a tortious interference claim.

[39] Sexton states that this alleged claim falls under the "bodily injury" portion of the policy.

There is no claim asserted by Tholen Construction related to the dog attacks. There are no factual assertions that anybody suffered bodily injury from the dog bites.[40] Instead, as noted above, Tholen Construction's claims are based in contract or fraudulent inducement of contract. These facts about the dog attacks are related to Tholen Construction's allegations that Sexton was unreasonable throughout the project.  The Court cannot find that these sparse allegations assert a claim for bodily injury related to Sexton's dog attacks or that that these allegations would provide notice to ANPAC that there was a claim potentially covered under its policy. Thus, Sexton fails to state a claim that ANPAC had a duty to defend on this theory.[41]

### c.  *Invasion of privacy claim*

In Sexton's Complaint with this Court, he alleges that ANPAC had a duty to defend him in the underlying litigation based on an allegedly asserted invasion of privacy claim.[42] In reviewing the Demand for Arbitration, however, the Court finds that there was no claim asserted against Sexton for invasion of privacy.  The only allegation that Sexton references in the 329-paragraph arbitration demand that conceivably relates to invasion of privacy is an allegation in which Tholen Construction states that "[i]n addition to threats of litigation, Sexton informed Adam Tholen that he hired private investigators to gather information on Shane Lone, the owner of Long's Lawn and Landscape, in an attempt to further manipulate and control Tholen

---

[40] Although Sexton asserts in his Complaint that Tholen Construction alleged in its Demand for Arbitration that some of its employees were injured by attacks from Sexton's dogs, a review of the Demand for Arbitration demonstrates that there were no actual allegations of *bodily injury*.

[41] Sexton attempts to include additional evidence that was apparently presented throughout the arbitration related to dog attacks.  This evidence is irrelevant as the Court only considers the underlying litigation with regard to the facts known at the outset of the case.

[42] Sexton states that this alleged claim falls under the "personal injury" or "advertising injury" portion of the policy.

Construction."[43] This statement in no way implicates an invasion of privacy claim asserted against Sexton. This allegation would not have alerted ANPAC of a duty to defend because there was no potential liability for an invasion of privacy claim because there was no claim. Accordingly, Sexton's theory that ANPAC had a duty to defend based on an invasion of privacy claim fails.

### d. *Malicious prosecution claim*

Sexton also contends that ANPAC's duty to defend was triggered because its policy provides coverage for claims for malicious prosecution.[44]  Sexton asserts that the Demand for Arbitration alleges facts "that constitute a claim for or substantially similar to malicious prosecution against Plaintiff."[45] A review of the arbitration demand again demonstrates that no claim for malicious prosecution was actually asserted against Sexton in the underlying litigation. Instead, Tholen Construction alleged that Sexton had a history of engaging in litigation and asserted that Sexton's past indicated that he would induce contractors to enter into contracts and then engage in litigation when he was unsatisfied with the work. Although these allegations were contained in Tholen Construction's Demand for Arbitration, they in no way assert a malicious prosecution claim in the underlying litigation. A malicious prosecution claim against Sexton would require that Sexton previously initiated a civil case against Tholen Construction and that the proceeding terminated in favor of Tholen Construction.[46] There are no such allegations in

---

[43] Demand for Arbitration, Doc. 7-1, p. 36, ¶ 253.

[44] Sexton states that this alleged claim falls under the "personal injury" or "advertising injury" portion of the policy.

[45] Complaint, Doc. 1, p. 12, ¶ 82.

[46] *See Nelson v. Miller*, 227 Kan. 271, 276, 607 P.2d 438, 443 (1980); *see also Shiddell v. Bar Plan Mut.*, 385 S.W.3d 478, 484 (Mo. Ct. App. 2012).

Tholen Construction's Demand for Arbitration.  Allegations in the underlying litigation would not have triggered ANPAC's duty to defend as there was no possibility of a malicious prosecution claim against Sexton. Thus, Sexton fails to state a claim against ANPAC for failure to defend on this theory.

### e. Indemnity agreements and "insured contracts"

Sexton's last argument that ANPAC had a duty to defend him in the underlying litigation relates to "insured contracts" coverage.  Sexton asserts that three lien waivers executed by Tholen Construction in Sexton's favor constitute "insured contracts" under the insurance policy and triggered ANPAC's duty to defend. Under ANPAC's policy, an "insured contract" is defined as:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.[47]

Sexton alleges that the three lien waivers included a release of all claims and indemnification of all claims. Because of the release and indemnification clause, Sexton contends that these lien waivers fall under the "insured contracts" provision of the policy.

Sexton's argument, however, fails to consider the plain, relevant language of the policy. It specifically states that "insured contracts" relates to an agreement in which the insured (in this case, Tholen Construction) assumes tort liability of another party (in this case, Sexton) to pay for "*bodily injury*" or "*property damage*" to a "*third person or organization*."  There are no allegations in the Complaint that these lien waivers relate to payments for bodily injury or

---

[47] ANPAC's Contractors Advantage Insurance Policy, Doc. 7-2, p. 39, ¶ F(8)(f)

property damage to a third party. Indeed, Sexton quotes language from the lien waivers in his Complaint, and this language provides that "Contractor hereby acknowledges and affirms its obligation to defend, indemnify, and hold Owner harmless from all liens, claims, demands, penalties, losses, costs, fees (including attorney's fees), disbursements, and liability whatsoever arising out of Contractor's failure to make payments as certified herein."[48]   Nothing in this language relates to assuming tort liability for the bodily injury or property damage to a third person, as required by the policy. Instead, the language relates to the contractor failing to make payments.  Thus, these lien waivers are not "insured contracts" under the policy.  None of the allegations in the underlying litigation against Sexton gave rise to ANPAC's duty to defend. Accordingly, Sexton fails to state a claim against ANPAC for failure to defend on this theory.

### f.   Summary

Counts I, II, and III of Sexton's Complaint all relate to ANPAC's alleged failure to defend Sexton in the underlying lawsuit and whether ANPAC breached its contract with Sexton or its duty of good faith and fair dealing.  Because the Court finds that Sexton fails to state a claim that ANPAC had a duty to defend, these three claims are dismissed. Count IV is an equitable estoppel claim, and Sexton alleges that ANPAC should be equitably estopped from asserting that the insurance policy was cancelled due to Tholen Construction's non-payment. Because it is irrelevant now as to whether the policy was in effect during the full policy period, Count IV is dismissed as moot.

To the extent that Sexton requests leave to amend his Complaint to state a claim, the Court denies this request.  The Court must look at the underlying litigation to determine whether

---

[48] Doc 1, p. 14, ¶ 93.

there was a potential for liability under the insurance policy which would trigger ANPAC's duty to defend. Any changes made to Sexton's Complaint would not remedy the allegations in the underlying lawsuit or change the language of the insurance policy.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 27th day of July, 2015.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE